Good morning, Your Honors. Reynold Finnegan on behalf of Grigor Ghazaryan, the petitioner. As you know, this is an asylum matter from Armenia. And I'd like to start out by saying that we have the Board of Immigration Appeals decision where they state that the immigration judge's adverse credibility finding was clearly erroneous. Also, it mentions that although the immigration judge cited the lack of certain corroborating evidence as a basis for her decision, such evidence was unnecessary in light of respondents' consistent and otherwise credible testimony. This matter arises from an asylum claim which is pre-Real ID Act, which means the asylum was filed before May 11, 2005. The Real ID Act changed the standard where asylum cases are judged. Plausibility is not a factor. Counsel, may I ask you a question? Sure. You're talking a lot about your asylum claims. I understand it. It was deemed barred by the one-year rule. And I guess I have two questions. One, did you argue that it was not barred due to changed or extraordinary circumstances? And did you make any arguments with respect to that issue in your blue brief? Yes, Your Honor. There was two arguments made. One was that it was based upon changed country conditions. And secondly, that respondent had mental and physical impairments, which was headaches and dizziness. The response to those was that I want to focus more on the headache. Where did you make those arguments in your blue brief? Let me take a look, Your Honor. So the extraordinary circumstances was the illness of your client? No, that's a separate argument as far as country conditions. The one I prefer to focus on was the physical impairment. And I believe the board and the judge relied on the fact that the petitioner had filed two non-immigrant visa extensions during that time period. If you look at page 19 of my brief, I talk about whether the documentation was sufficient to establish the one-year deadline, overcome the one-year deadline. He was six months late, 18 months. It's not a long period of time. He was pursuing non-immigrant visa applications. And the point I'm making is if you read the BIA decision, they focus on that his daughter assisted him with two non-immigrant visa applications. My point is if the daughter is assisting him, it tends to show that he had headaches and dizziness and was unable to do the applications by himself, which would tend to support the fact that he had a reasonable basis for being six months tardy with the application. I also believe that even if we fail on the one-year issue, there is a viable claim for withholding of removal, Your Honor. And I believe with credibility established with the elements of past persecution, there's a clear probability of a well-founded fear. The board disagreed with you there.  So the immigration judge said your client was not credible. The board reversed that finding, right? Correct. And then the board said he's credible, all right, but he hasn't made a sufficient showing, correct? Correct. Now, where did the board go wrong on that issue? Okay. The board, the basis for denying the withholding of removal application was the board said that he does didn't support the claim with sufficient documentation. And like I stated earlier, the REAL ID Act came into effect after this case, and that's the change in the law that requires the documentation. Before the REAL ID Act, such documentation is not required. Although it's, you know, it's preferred, it's not required. So I believe if there was a sufficiency of evidence situation, that should have been remanded for consideration. That's also in my brief. And I believe that's where the board went wrong. But the standard is it's got to be that you've got to show us that the evidence is so compelling that no reasonable fact finder could have found against your client. Is that right? Is that the standard? That's the standard. Basically, not only that the evidence supports Mr. Gazarian's position, but it compels us to, it compels us to accept it. Certainly. Certainly. But I believe it does. And what is that? That's my next question. What is that? He's been, he was hurt, you know, four separate times. So that's in the evidence. That's the testimony. It's not like his testimonial evidence is discounted. It needs to be accepted now that he's found credible. So even without that supporting documentation, the evidence is this, that he made complaints to the Ministry of Culture. About the instruments. Right, about the instruments. But also, you know, the underlying fact is that there's not enough money to buy the instruments. What does that mean? That means that there's, in essence, corruption going on or implied or that he believes, and he gave a 20-minute speech in front of the Vladimir Spikabuck Musicians Trade Group. There was also a letter submitted where 90 out of 100 of the orchestra members signed that letter. So I believe that shows widespread corruption, contrary to what the government argued in that brief. How does that show widespread corruption? It just shows that 90 members of the orchestra wanted new instruments. Well, I think there was a counter-argument that it was just this one particular person had a problem. And with 90 out of 100, I'm putting forth the argument that it was widespread in the orchestra. It wasn't just the one person. So that's what I'm saying there. As far as the withholding, I'm sorry. This is Judge Levy in Portland. Now, on the issue of whether the board erred in saying that corroboration of some kind was necessary, that's one scenario. But on the other hand, if the board simply made that as an observation in deciding the case, that doesn't mean that they've done anything illegal because they can take note of the absence of that. Would you agree that it would be we would have to find some unequivocal statement by the board that says you can't win without corroboration or words to that effect? Would you agree that that's the standard? They're not prohibited from observing that there was no corroboration. That doesn't make it foul, does it? Yeah, they're not prohibited from observing, but they have to support their conclusion that there's a denial for the withholding. And the only point I read is that they say there's not cooperation to support their conclusion that withholding is a mandatory form of relief. A silence discretionary. Withholding of removal is mandatory. I'm sorry, say that again. Withholding of removal. I don't think you answered Judge Levy's question. In fact, in point of fact, the board made a finding that the paucity of readily available corroborating evidence bears on the Respondent's burden of proving their cases. And you're saying that was wrong as a matter of law to make that finding and use it as a basis for ruling against your client. Because before the Real ID Act came into effect, we had we have Ninth Circuit law that says if someone is deemed credible, then there is no requirement at all of having any corroborating evidence. You just take their testimony as truthful. That's what you're trying to say, right? Yes. Okay. What's your point about withholding being mandatory? In the Immigration and Nationality Act, asylum is a discretionary form of relief. Withholding of removal is a mandatory form of relief, which means if there's, if an alien qualifies, it has to be granted because we don't want to send aliens back to a country where they're likely to be harmed. That's the rationale behind the mandatory form of relief. So my point is, is this one, I guess that's the point. Do you want to reserve the remainder of your time? Yes, ma'am. Please reserve the remaining time you have. Thank you. May it please the Court, Christina Perez-Skindola for the Attorney General. This case is about a failure to meet a burden, specifically to show a nexus to political opinion. And I think we can start out with the assumption that Mr. Hazarian was credible in his testimony. Okay. He was credible and he was beaten up and hit by a car on four occasions. And you take his testimony as true, right? Yes, that's correct, Your Honor. So you're relying on the point that this wasn't a political report. Reporting alleged corruption was not a political act as an enumerated ground. Well, yes, Your Honor, that does get to the heart of the matter here. And I counted actually seven incidents of mistreatment. And we can assume he was credible. So there's no dispute. No dispute. He was definitely persecuted. It's just your argument it wasn't on an enumerated ground. Exactly. Okay. And getting to Judge Levy's point, there was an absence of corroborating evidence here. That could have been easily obtained. And I would note that the immigration judge asked Mr. Hazarian on May 31, 2005, at his hearing, specified what kind of documentation he needs, specifically to show if there were other musicians who had the same issue, who were promised new instruments, also to get the medical records from Armenia authenticated. Well, wait a second. What about Exhibit, I guess it's ER 247, where there is a medical record that he has a brain concussion from Armenia, with not readily available corroborating evidence that he provided? Yes, but it was not authenticated. What is he supposed to do to get it authenticated, go back to Armenia? He could get more information from the hospital. I mean, the letter was pretty unconclusive. But, I mean, the judge accepted this. There's four medical records here, four more? There are more medical records. For example, the daughter's rape, her medical treatment following that. That would be starting at page 322 in the record. And I'm going to consider that incident as something that supports Mr. Hazarian's claim. That's one of the seven incidents. He has documentation in here that he worked with the Armenian State Philharmonic Orchestra? Yes. Okay. And then there's Exhibit A, which says it's from the humanitarian organization. Where it actually is, I guess, stamped and certified. And it says, Carrying out the civic duty, Mr. Hazarian Grigor S. has acted against corruption and use of power by the government officials engaged with culture and musical art because of what has undergone two prosecutions on the part of authorities and has been forced to leave Armenia. Now, why isn't that credible evidence, corroborating evidence of his testimony? It is. We could put it under the general umbrella of corroborating evidence. However, as the immigration judge pointed out, it's not sufficient. Tell me, what would have been sufficient? Mr. Hazarian's claim. Now, I'm just addressing the Stivakov Foundation letter. Mr. Hazarian's claim was that he belonged to this organization, he gave a 20-minute speech in front of it, and that the organization helped secure his release when he was detained by the police. None of that is in the letter. And in addition to that, the immigration judge asked. Well, why does that have to be in the letter? He testified credibly to it. Because it's information that you could reasonably expect to be in a letter of that sort, and it's omitted. How do you distinguish this case from, I'm going to mispronounce it, Fedunyak v. Gonzales? Fedunyak. Fedunyak v. Gonzales. Right. Isn't it pretty much at the squirreling point? I believe that Fedunyak is similar to Bagdasarian, and these were cases involving demands for bribes by vendors, by government officials. Political corruption, and that's what his claim is here, political corruption, that instead of using the money, the two departments that were persecuting him, instead of using the money for the instruments, which they should have been, they were keeping it for themselves. Or doing something else with the money, right? That's the point. He's saying that, but there's no evidence of that. They said, we promise you we'll buy you a new clarinet, continue playing in the orchestra. But the evidence is his testimony. Yes. His testimony is evidence. Yes, it is. And the board found that he was credible, so there's the evidence. Okay, but you're asking what distinguishes his case from ones where an Armenian government official demanded a bribe. In this case, it's a promise by an employer. It's like saying to your paralegal, you know, I promise you when you're here. But the employer is the governor. Not the governor, the government, right? I mean, this is the state, and I don't understand. It's the state orchestra. State organization, the state orchestra, whatever it's called. So isn't it the same? I mean, I don't see the distinction, I guess, is what I should say. I guess you're understanding. So his employer is the state, okay? But the issue here, and a promise was made, you know, we're going to give you new equipment to do your job. That's right. The employer did not meet that promise. That's all. We don't have any information that, well, I know that the orchestra earned, you know, $50,000 over six years from producing CDs. That's not here. So Mr. Gazarian doesn't seem to even know. I think his claim is based on speculation. He believes, as I believe he just argued before you, it's his belief that the government was being corrupt. But he hasn't provided anything. He asserted that belief publicly, and he complained about that. We know you have the money. You know your money was supposed to be for buying new instruments. Instead, you kept it, and instead of spending it the way it was supposed to be spent. That's a corrupt act. Do you agree with that? Yes. Okay, yes, I'll concede that. Well, actually, no. That gets to the heart of it because, I mean, an employer can choose to spend resources. I mean, we don't know that the orchestra brought in money that's being misspent. There's also evidence and testimony in the record from Mr. Gazarian saying that the Armenian government sponsored the orchestra to go on these tours. These could be something that loses an orchestra money. We just don't know. But he said, here's why you guys promised us instruments, and we didn't get them, and it's corruption, and you guys are a bunch of corrupt idiots or whatever, but he gives a speech. Now, what happens as a result of the speech that he gives and the letters that he sends? You know, now that's where the persecution comes in.  I think you've summed it up, actually. The clarinet, the promised clarinets were not delivered. We don't know whether that was corruption or not. This could, I mean, it could be. Well, we have evidence. We have there, we have corroboration that it was corruption from the organization. Which organization? The Spivakov Foundation. Okay, so the Spivakov Foundation wrote a letter stating that Mr. Gazarian spoke against corruption. So, Your Honor, if we were to take this line of argument, then if the Spivakov Foundation calls something corruption, then that makes it corruption? Well, no, but he was beaten as a result of that. Yes, and he first called it corruption, and then he spoke about it, and this foundation agrees with him. You know, frankly, counsel, oh, gosh, I'm not going to be able to, Paraskindola. Paraskindola. Paraskindola, Ms. Paraskindola. There's more corroboration in this record than I've seen in numerous other cases that I've seen. Well, just because there are more papers doesn't mean the evidence is stronger. It's not more papers. It's corroborating evidence. And we have a credible petitioner, which is also not usually the case. Yes, Your Honor. I just want to respond to Judge Mann's claim about, you know, that this individual was persecuted after he complained about it. That's the whole problem here. I mean, I don't think anyone's disputing that this mistreatment, you know, would rise to the level of persecution. But we don't know, you know, was Mr. Ghazarian involved in something else? Was there a case of mistaken identity? We just don't know. And when the board ---- Well, now it seems like you're speculating because we have evidence of one motivation, and now you're speculating that there could have been all sorts of other things going on. Well, Your Honor, I'm not really speculating. It's just that the burden of proof here to show the nexus was not met. And the standard that this Court has to apply is substantial evidence, and is the record compelling of finding that these incidents of mistreatment were on account of Mr. Ghazarian's complaints. Now, I would also, to address your point about the sufficiency of the corroboration,  I would say that, you know, for six years he continued to play with this orchestra and earn a salary. And then after these incidents started in January 2000, through this mistreatment, which ended on November 5, 2000, he continued to play and tour with the orchestra. And, in fact, his last concert with them was two weeks before he left Armenia. Also, I believe his claim rests on speculation. We just can't tell what happened. In fact, he testified, and this is in the administrative record at page 156, that the tours were financed by the government and by private sponsors. So, you know, the evidence is really hazy here as to whether it's corruption. I mean, that's his theory, and there might be something to that. But, you know, when the board doesn't know or doesn't have enough information to make a decision like that, you know, it can't find that there's a nexus. All right. Well, now, I want to be sure that I understand. Essentially, what I hear you saying is that his assertion of corruption may be false because he is speculating about that, as opposed to knowing that there was corruption or what happened to this money instead of being spent on instruments. Yes, Your Honor. And the fact that the accusation of corruption may be speculation or even may be false, the report is given by a credible witness who, whether it's true or not, was persecuted on account of what he said. Isn't that where we are? Your Honor, we don't know that for sure. Well, what don't we know for sure? I mean, we don't know why the response, I guess, to his letter writing was on such a scale. It hasn't been established in the record. Again, he's established his one scenario, and now you're speculating that there are other things. I'm sorry. I have to disagree that speculation, it's a failure to meet a burden on his part to show. All right. Well, thank you, counsel. You're well over your time. Mr. Buzarian and then Mr. Finnegan, you have 30 seconds. Thank you. There's five grounds for asylum or withholding of removal. One of them is political opinion, and the whistleblower situation falls under political opinion. We've also accepted imputed political opinion. And he doesn't need to prove his case to have an expression of political opinion. After his 20-minute speech was when he had the August 2000 incident, so it's related to his expression. The 20-minute speech, was that the hit and run? No, that was in front of the Vladimir Spivakov group. He gave a speech on corruption. What happened right after that? After that, he was arrested by the police in August of 2000, and then he was detained for two days and beaten during that detention. There's also other instances where it was right after he submitted letters where he was beaten, which are the other instances. So I believe there's a direct correlation there. All right. Thank you, counsel. Buzarian v. Holder will be submitted. Thank you, Your Honor. Thank you. Thank you both, counsel, for an excellent argument. Heath v. Holder has been submitted on the briefs, and we'll take up Williams v. Schwarzenegger.
judges: Mahan, Leavy, Wardlaw